UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EDWARD W.,

                Plaintiff,

v.

                1:21-CV-0310
                (GTS)

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

                Defendant.
_____

APPEARANCES:                                            OF COUNSEL:

EDWARD W.
  Plaintiff, *Pro se*
164 Hobart St.
Utica, NY 13501

SOCIAL SECURITY ADMINISTRATION        CHRISTOPHER L. POTTER, ESQ.
OFFICE OF GENERAL COUNSEL
  Counsel for Defendant
JFK Federal Building, Suite 625
15 New Sudbury Street
Boston, MA 02203

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this action filed by Edward W. ("Plaintiff") against the Acting Commissioner of Social Security Kilolo Kijakazi ("Defendant") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), is Defendant's motion for judgment on the pleadings. (Dkt. No. 22.) For the reasons set forth below, Defendant's motion is denied.

**I.    RELEVANT BACKGROUND**

    **A.    Relevant Facts**

Plaintiff was born in 1980, making him 38 years old at the time he applied for supplemental security income under Title XVI of the Social Security Act, alleging disability beginning July 21, 2018. (Dkt. No. 22, at 2; T. 11, 25.)[1] Plaintiff alleges he is disabled due to post-traumatic stress disorder ("PTSD"), arthritis, and a back injury. (T. 88-89.)

B.  **Procedural History**

On March 12, 2019, Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act, alleging disability beginning on July 21, 2018. (T. 11.) The claim was initially denied in June 2019, and again upon a request for reconsideration on October 9, 2019. (T. 11; 117-20; 125-28.) On October 25, 2019, Plaintiff's written request for a hearing was received, and Plaintiff appeared and testified at a telephonic hearing on March 26, 2020. (T. 11; 61-82.) Plaintiff appeared at this hearing without representation. (T. 11, 63-65.) On April 14, 2020, Administrative Law Judge ("ALJ") Jennifer Gale Smith issued a written decision finding that Plaintiff was not disabled under the Social Security Act. (T. 11-27.) On February 19, 2021, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (T. 1-4.)

C.  **The ALJ's Decision**

Generally, in her decision, the ALJ made the following ten findings of fact and conclusions of law. (T. 11-27.)

First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 12, 2019 (i.e., the application date). (T. 13.)

---

[1] The Administrative Transcript is found at Dkt. No. 13. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

Second, the ALJ found that Plaintiff has eleven severe impairments: (1) asthma; (2) chronic obstructive pulmonary disease ("COPD"); (3) depressive disorder; (4) anxiety disorder; (5) posttraumatic stress disorder ("PTSD"); (6) borderline intellectual functioning; (7) learning disorder; (8) substance abuse disorder; (9) vertigo; (10) headaches; and (11) cervical and lumbar osteoarthritis. (T. 13.) More specifically, the ALJ found that these medically determinable impairments significantly limit Plaintiff's ability to perform basic work activities as required by SSR 85-28. (T. 13.) The ALJ further found that Plaintiff's following five impairments were not severe: (1) hypertension; (2) gastroesophageal reflux disease ("GERD"); (3) hernia; (4) hearing loss/ear implants; and (5) sleep disorder. (T. 13-14.)

Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 14.) More specifically, the ALJ found that Plaintiff's COPD and asthma do not meet or equal listing 3.02 for chronic respiratory disorders or listing 3.03 for asthma, because the medical evidence does not show listing-level FEV1 levels, listing-level FVC levels, chronic impairment of gas exchange, or exacerbations requiring three hospitalizations within a twelve-month period and at least thirty days apart. (T. 14.) The ALJ found that Plaintiff's migraine headaches and vertigo also do not meet or equal closely analogous listed impairments. (T. 14.) The ALJ found that Plaintiff's cervical and lumbar osteoarthritis do not meet or equal listing 1.04 for disorders of the spine, because the medical evidence does not show that Plaintiff has compromise of a nerve root or spinal cord with motor loss, sensory or reflex loss, positive straight leg raising, spinal arachnoiditis, or lumbar spinal stenosis. (T. 14-15.)

The ALJ further found that Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.05, 12.06, 12.11, and 12.15. (T. 15.) The ALJ found that Plaintiff's mental impairments do not result in one extreme limitation or two marked limitations in a broad area of functioning, pursuant to paragraph B of listing 12.05. (T. 15.) The ALJ found that Plaintiff has moderate limitations in the following four areas related to mental impairment: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (T. 15-16.) The ALJ also found that the evidence in this case fails to establish the presence of the paragraph C criteria of listing 12.04, 12.06, and 12.15, because it does not show that Plaintiff's mental disorder(s) are "serious and persistent" to the extent that Plaintiff has minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life. (T. 16.)

Fourth, the ALJ found that Plaintiff has the following residual functional capacity ("RFC"):

> Claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) except that the claimant should not climb ladders, ropes and scaffolds, balance, kneel, crouch and crawl. Claimant can occasionally climb ramps and stairs and stoop. The claimant can frequently reach. The claimant should have no more than occasional concentrated exposure to respiratory irritants such as dust, odors, fumes and gases and extreme hot and cold temperatures and humidity. The claimant can tolerate no more than moderate levels of noise as defined in Appendix D of the Selected Characteristics of occupations, 1993 Edition; should avoid work outdoors in bright sunshine and work with bright or flickering lights such as one would experience welding or cutting metals. The claimant should not work at unprotected heights or work in close proximity to dangerous machinery or moving mechanical parts of equipment. Claimant should work at simple, routine and repetitive tasks. Claimant should work in a low stress job defined as occasional decision-making, occasional judgment required and occasional changes in the work setting. Claimant should work at goal-oriented

> work rather than production pace rate work. Claimant should have occasional contact with coworkers, supervisors and the public.

(T. 16-17.) More specifically, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the symptoms Plaintiff alleged in his application for benefits and at the hearing, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. (T. 18-25.) The ALJ found that, after thoroughly reviewing Plaintiff's medical records, the medical evidence contained therein did not require a more limited RFC than the one she had proscribed. (T. 16-22.) The ALJ also found partially persuasive the opinions provided by Dr. D. Alexander, Psy. D., Dr. E. Lorensen, M.D., Dr. E Gagan, M.D., Dr. J. Lawrence, M.D., Z. Lin, N.P., and C. Eddy, L.M.H.C. (T. 22-25.) The ALJ also found that Plaintiff had greater limitations than those identified by Dr. Alexander, Dr. Gagan, and Dr. Lawrence. (T. 22-25.)

Fifth, the ALJ found that Plaintiff has no past relevant work. (T. 25.)

Sixth, the ALJ found that Plaintiff was born on September 2, 1980, and was 38 years old (i.e., a "younger individual age 18-49") as of the date he filed his application. (T. 25.)

Seventh, the ALJ found that Plaintiff has a limited education and is able to communicate in English. (T. 25.)

Eighth, the ALJ found that the transferability of job skills is not an issue in this case because Plaintiff does not have past relevant work. (T. 25.)

Ninth, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff can perform jobs existing in significant numbers in the national economy. (T. 25-26.) More specifically, the ALJ found the vocational expert's ("VE") testimony consistent with the Dictionary of Occupational Titles ("DOT") and supported by the VE's thirty-six years of

experience with professional placement and job analyses, where the VE found that Plaintiff could perform the requirements of the following three occupations: (1) laundry folder, DOT 369.687-018, with SVP 2, which requires light exertion; (2) package sorter, DOT 222.687-022, with SVP 2, which requires light exertion; and (3) mail room clerk, DOT 209.687-026, with SVP 2, which requires light exertion. (T. 26.)

Tenth, the ALJ found that Plaintiff has not been under a disability, as defined in the Social Security Act, since March 12, 2019, the date the application was filed. (T. 26.)

### D. The Parties' Briefing on Their Motions

#### 1. Plaintiff's Motion for Judgment on the Pleadings

Plaintiff, proceeding *pro se*, did not file a brief in this matter despite being afforded multiple opportunities to do so. (Dkt. Nos. 13, 15, 23.) The Court therefore is entitled to consider the record without benefit of any arguments he might have asserted. General Order #18, at 6.

#### 2. Defendant's Motion for Judgment on the Pleadings

Generally, in her motion, Defendant sets forth four arguments. (Dkt. No. 22.)

First, Defendant argues that Plaintiff validly waived his right to representation. (*Id.* at 3-5.) More specifically, Defendant argues that the following three steps were taken to inform Plaintiff of his right to representation: (1) Plaintiff was sent the proper statutory and regulatory notices regarding representation prior to his hearing, including the notice entitled "Your Right to Representation"; (2) Plaintiff was sent a list of organizations that provide legal services free of charge or contingent upon a claimant's receipt of benefits; and (3) the ALJ notified Plaintiff of his right to free representation at his hearing, and after doing so, Plaintiff stated he wanted to proceed with hearing despite his lack of representation. (*Id.* at 4.) Defendant argues that, based on these facts, Plaintiff validly waived his right to representation. (*Id.* at 5.)

Second, Defendant argues that the ALJ satisfied her heightened duty to develop the record by obtaining records from each of Plaintiff's providers, obtaining several functional assessments from qualified experts, and questioning Plaintiff about his treatment. (*Id.* at 5-7.) More specifically, Defendant argues that the ALJ scrupulously and conscientiously sought to identify all of Plaintiff's providers and treatment for the purpose of obtaining records, including obtaining hundreds of pages of medical evidence and opinions from consultative examiners Dr. Alexander and Dr. Lorensen. (*Id.* at 6.) Defendant argues that the ALJ thoroughly questioned Plaintiff at the hearing about his medical conditions and symptoms. (*Id.*) Defendant further argues that there are no "obvious gaps" in the administrative record, and that the ALJ had a "complete medical history" from which to assess Plaintiff's RFC. (*Id.* at 6-7.)

Third, Defendant argues that substantial evidence supports the ALJ's RFC determination. (*Id.* at 7-14.) More specifically, Defendant argues that the ALJ's RFC determination is supported by the medical opinion evidence, as well as the longitudinal medical treatment.[2] (*Id.*) Defendant argues that the ALJ thoroughly evaluated the medical opinions of record, Plaintiff's medical treatment, and Plaintiff's testimony, and properly concluded that substantial evidence supported the ALJ's RFC finding. (*Id.* at 14.)

Fourth, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff could perform certain jobs existing in significant numbers in the national economy. (*Id.* at 15-17.) More specifically, Defendant argues that the ALJ posed several hypothetical questions to the VE at the hearing (including one hypothetical that corresponded to the ALJ's ultimate RFC determination), and that the VE testified that Plaintiff could perform the three occupations

---

[2]    In making this argument, Defendant summarizes the ALJ's findings on each piece of medical evidence, as well as the medical providers' opinions. (Dkt. No. 22, at 7-14.)

the ALJ later identified in her decision. (*Id.* at 15.) Defendant argues that that where, as here, the hypothetical posed to the VE closely parallels an RFC finding that is supported by substantial evidence, the hypothetical is proper and the ALJ may rely on the VE's testimony. (*Id.* at 16.)

## II.     APPLICABLE LEGAL STANDARDS

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord*, *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

   **B.**  **Standard to Determine Disability**

   The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as

9

>to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord*, *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

### III. ANALYSIS

#### A. Whether Plaintiff Validly Waived His Right to Representation

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 22.) To those reasons, the Court adds the following analysis, which is intended to supplement, and not to supplant, Defendant's reasoning.

"Although a claimant does not have a constitutional right to counsel at a social security disability hearing, [he] does have a statutory and regulatory right to be represented should [he] choose to obtain counsel." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009). Under 42 U.S.C. § 406(c), "[t]he Commissioner of Social Security shall notify each claimant in writing, together with the notice to such claimant of an adverse determination, of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner of Social Security." 42 U.S.C. § 406(c). "Such notification shall also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge." *Id.* Along with the written notifications, "at the hearing itself, 'the ALJ must ensure that the claimant is aware of [his] right [to counsel].'" *Lamay*, 562 F.3d at 507 (quoting *Robinson v. Sec'y of Health & Human Servs.*, 633 F.2d 255, 257 (2d Cir. 1984)). Plaintiff may waive his right to representation, so long as he has been properly informed of that right. *Anna M. v. Saul*, 19-CV-0367, 2020 WL 2543044, at *6 (N.D.N.Y. May 19, 2020) (Suddaby, C.J.).

10

In preparation for the hearing, Plaintiff was sent a notice entitled "Your Right to Representation" that advised him of his right to have a representative when working with the SSA and identified the benefits of having representation in this process. (T. 138-39.) Plaintiff was also sent a list of organizations that provide legal services free of charge or contingent upon his receipt of benefits. (T. 140-45.) At the hearing, the ALJ again discussed the right of representation with Plaintiff, noting that when someone from the SSA called him a few months before the hearing, that individual also informed him of his right to representation. (T. 64.) Plaintiff admitted that he recalled that phone call. (T. 64.) When asked by the ALJ at the hearing if he "wish[ed] to go ahead today," Plaintiff confirmed that he did. (T. 64-65.)

Based on these facts, the Court finds that Plaintiff validly waived his right to representation in this matter. *Lamay*, 562 F.3d at 509-10; *Anna M.*, 2020 WL 2543044, at *6-7.

      B.      **Whether the ALJ Properly Developed the Record**

After carefully considering the matter, the Court answers the question in the negative, for the reasons set forth below.

In making a determination regarding a plaintiff's disability, it is the "ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). The ALJ has an "affirmative obligation to develop the [plaintiff's] complete and accurate medical record," and failure to comply with this mandate is legal error. *Camellia O. v. Comm'r of Soc. Sec.*, 19-CV-1153, 2021 WL 354099, at *5 (N.D.N.Y. Feb. 2, 2021) (Stewart, M.J.); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). "However, the ALJ's duty to develop the record is not unlimited and is discharged when the ALJ possesses [the claimant's] complete medical history and there are no obvious gaps or inconsistencies in the record." *Lakeisha H. v. Comm'r of Soc. Sec.*, 19-CV-1395, 2021 WL

1206549, at *6 (N.D.N.Y. Mar. 31, 2021) (McAvoy, J.) (internal quotation marks omitted); *Genito v. Comm'r of Soc. Sec.*, 16-CV-0143, 2017 WL 1318002, at *8 (N.D.N.Y. Apr. 7, 2017) (Suddaby, C.J.) ("[T]he duty to develop the record is not unlimited, even in situations where the Plaintiff is unrepresented.").

Where, as here, a plaintiff proceeds *pro se*, "the ALJ's duties are heightened." *Moran*, 569 F.3d at 113 (internal quotation marks omitted); *Simpson ex rel. Z.J.M. v. Comm'r of Soc. Sec.*, 10-CV-0760, 2012 WL 3201958, at *6 (N.D.N.Y. Aug. 3, 2012) (Suddaby, C.J.) ("An ALJ is under a heightened duty to develop the record in order to ensure a fair hearing where a claimant appears pro se."). "This is because the ALJ must adequately protect a *pro se* claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered by scrupulously and conscientiously prob[ing] into, inquir[ing] of, and explor[ing] for all the relevant facts." *Lakeisha H.*, 2021 WL 1206549, at *6 (internal quotation marks omitted); *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990); *Robinson,* 733 F.2d at 257. When reviewing the ALJ's decision, the Court must perform a "searching investigation of the record" to ensure that the plaintiff's rights were protected. *Camellia O.*, 2021 WL 354099, at *5. "Remand may be required where the ALJ fails to discharge his or her affirmative obligation to develop the record when making a disability determination." *Lakeisha H.*, 2021 WL 1206549, at *6 (citing cases).

Defendant argues that the ALJ properly fulfilled her duty to develop the record because the record includes hundreds of pages of Plaintiff's medical records, opinions from consultative examiners and Plaintiff's medical providers, as well as Plaintiff's testimony from the hearing regarding his medical conditions, symptoms, and their impact on his ability to work. (Dkt. No. 22, at 5-7.) Although the Court agrees that the record contains these materials, the issue in this case revolves around the documents *not* included in the administrative record.

More specifically, where, as here, "the Appeals Council denies review after considering new evidence, the Secretary's final decision necessarily includes the Appeals Council's conclusion that the ALJ's finding remained correct despite the new evidence." *Perez*, 77 F.3d at 45; *Michael S. v. Saul*, 18-CV-0443, 2019 WL 4038532, at *4 (N.D.N.Y. Aug. 27, 2019) (Dancks, M.J.). Based on this principle, "'the administrative record should contain *all evidence submitted before this final decision, including the new evidence that was not before the ALJ.*'" *Michael S.*, 2019 WL 4038532, at *4 (quoting *Perez*, F.3d at 45) (emphasis added); *Lasher v. Comm'r of Soc. Sec.*, 11-CV-0777, 2012 WL 4511284, at *4 (N.D.N.Y. Oct. 1, 2012) (Peebles, M.J.). The fact that evidence first submitted to the Appeals Council becomes part of the record "does not require the district court to perform any functions performed by an ALJ," but rather allows the Court "simply [to] review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the Secretary." *Perez*, 77 F.3d at 46; *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015); *Citro v. Colvin*, 16-CV-6564, 2018 WL 1582443, at *4, n. 12 (S.D.N.Y. Mar. 28, 2018) (finding that treatment notes submitted to the Appeals Council, including those not received by the ALJ, that "relate to the period on or before the ALJ's decision" were part of the "entire administrative record," which the Court "not only may but must review to determine whether the agency decision is supported by substantial evidence").

In this case, the Court cannot review the entire administrative record to determine whether the ALJ's decision is supported by substantial evidence because the administrative record does not contain approximately 37 pages of evidence that Plaintiff submitted to the Appeals Council. (*See generally* Dkt. No. 13.) On December 29, 2020, Kimberly MacDougall with the North Country Advocate's office sent a letter stating that she (on Plaintiff's behalf)

13

>submitt[ed] new and material evidence consisting of records from the Neighborhood Center dated June 28, 2019[,] through November 22, 2019[,] submitted on November 1, 2020; Community Health and Behavioral Services dated October 20, 2020[,] submitted on November 1, 2020; and Oneida County Department of Social Services dated November 14, 2019[,] through November 17, 2020[,] submitted on November 17, 2020.

(T. 270.)

In denying Plaintiff's request for review, the Appeals Council considered these documents, and made the following three findings: (1) the medical records from the Neighborhood Center dated June 28, 2019, and from the Oneida County Department of Social Services dated November 19, 2019, and November 26, 2019, are not "new" because they are copies of portions of Exhibit C1F and C11F; (2) the medical records from the Neighborhood Center dated March 28, 2018, through November 22, 2019, and from the Oneida County Department of Social Services dated October 24, 2019, through December 30, 2019, "do[] not show a reasonable probability that [they] would [have] change[d] the outcome of the decision"; and (3) the medical report from Community Health and Behavioral Services dated October 20, 2020, would not affect the ALJ's decision because it did not relate to the period at issue. (T. 2.)

Except for the October 20, 2020, medical report from Community Health and Behavioral Services,[3] the administrative record before the Court does not contain the approximately 37 pages of medical records that Plaintiff submitted to the Appeals Council (and that the Appeals Council purportedly assessed when denying Plaintiff's request for review). Based on the Court's overview of the documents provided to the Appeals Council, at least a portion of them (i.e., the medical records from the Neighborhood Center dated March 28, 2018, through November 22,

---

[3]   The Court notes, although a copy of this document is included in the administrative record, it is illegible. (T. 47-57.)

2019, and from the Oneida County Department of Social Services dated October 24, 2019, through December 30, 2019) relates to the relevant time period and could provide additional information regarding Plaintiff's continued treatment for his mental health conditions. *See Baladi v. Barnhart*, 33 F. App'x 562, 564 (2d Cir. 2002) (summary order) ("[N]ew evidence submitted to the Appeals Council forms part of the administrative record under review, [but] only to the extent that it relates to the time frame encompassed in the ALJ's decision."); 20 C.F.R. § 416.1470(c). Because the documents are not included in the administrative record, the Court cannot perform its full review of the case to determine whether the ALJ's decision is supported by substantial evidence. *Citro*, 2018 WL 1582443, at *4, n. 12; *Pascal T. v. Berryhill*, 17-CV-1347, 2019 WL 316009, at *5 (N.D.N.Y. Jan. 24, 2019) (D'Agostino, J.).

Further, the provision of additional records, including those from the Neighborhood Center (i.e., Plaintiff's treatment provider for his mental health conditions, which the ALJ found to be "severe impairments"), undermines Defendant's argument that the ALJ adequately fulfilled her heightened obligation to develop the record. At the time of the hearing, the ALJ had received only ten pages of treatment notes from the Neighborhood Center, which addressed Plaintiff's appointments on May 15, 2018, March 28, 2019, and June 28, 2019. (T. 271-80.) However, these treatment notes state that Plaintiff had additional assessments on August 9, 2018, October 4, 2018, December 6, 2018, and January 31, 2019—records that related to the period at issue but were not included in the administrative record or addressed (or sought after) by the ALJ. (T. 274.) The most-recent record from the Neighborhood Center concerned an assessment occurring approximately eight months before the hearing in this case, leaving an unexplained, "obvious gap" in Plaintiff's treatment records. (T. 274.) *See also Lakeisha H.*, 2021 WL 1206549, at *6.

15

The hearing transcript further shows that the potential for outstanding medical records, such as those from the Neighborhood Center, were not adequately addressed by the ALJ when she questioned Plaintiff. When (towards the end of the hearing) the ALJ asked Plaintiff if there was anything else he wanted to tell her, he stated that he was not sure and asked if she had his medical records. (T. 73.) The ALJ responded that she had "the medical records from the Neighborhood Center and Slo[cum] & Di[ckson] on Burstone Road," but did not state the time periods to which these records related. (T. 73.) When Plaintiff stated that he used to attend the Neighborhood Center before "[his] person left," the ALJ did not ask Plaintiff when he stopped his treatment at the Center. (T. 68.) Plaintiff again mentioned the Neighborhood Center when addressing a symptom he experiences, to which the ALJ responded (without further follow up as to the timing), "[b]ut you haven't been back to the Neighborhood Center in some time[?]" (T. 70.) The ALJ did not attempt to confirm when Plaintiff had stopped treatment at the Neighborhood Center, nor when (or where, or for how long) he had attempted the group therapy sessions he had mentioned, but instead summarily concluded the portion of the hearing in which she received Plaintiff's testimony. (T. 67-73.)

Because the missing documents prohibit the Court from reviewing the entirety of the administrative record and show that the ALJ did not fulfill her heightened obligation to develop the record for Plaintiff, who appears *pro se*, the Court remands this matter for further development of the record. To facilitate a determination supported by substantial evidence, the ALJ is instructed to supplement the record by requesting and obtaining the above-referenced missing documents. The ALJ must then redetermine Plaintiff's claim and issue a new decision. The parties are respectfully advised that, should the case be returned to the Court, it will expedite

its decision regarding it. *Bryan B. v. Kijakazi*, 20-CV-0767, 2022 WL 976889, at *4-5 (N.D.N.Y. Mar. 31, 2022) (Suddaby, C.J.).

    **C.**    **Whether the Court Should Address the Substance of the ALJ's Decision**

After carefully considering the matter, the Court answers this question in the negative.

Because the Court has already determined, for the reasons previously discussed in Part III.B. of this Decision and Order, that remand of this matter for further administrative proceedings is necessary, the Court declines to analyze the ALJ's decision at Steps 2-5. *Camellia O.*, 2021 WL 354099, at *8; *Michael S.*, 2019 WL 4038532, at *6.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 22) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **<u>VACATED</u>**; and it is further

**ORDERED** that the matter is **<u>REMANDED</u>** to Defendant, without a direct finding of disability, for further proceedings consistent with this Decision and Order, pursuant to sentence four of 42 U.S.C. § 405(g).

Dated: September 13, 2022
       Syracuse, New York

                                                   Glenn T. Suddaby
                                                   U.S. District Judge